# Lamberton *versus* Stouffer.

1. The rent of a cropper being a portion of the crop, falls due and is payable only when the crop is harvested.

2. Grain sown in one year and harvested the next is the issues and profits of the year in which it was harvested.

3. By articles, dated in June 1864, for the sale of land leased to the shares, it was agreed that the purchaser should become "landlord and entitled to all the rents and profits including the proceeds of the farm," the vendor to have her portion up to July 1st 1864.   *Held*, that the purchaser was entitled to three-fourths of the landlord's share of grain sowed in 1863 and harvested in 1864.

March 15th 1867.   Before WOODWARD, C. J., THOMPSON and AGNEW, JJ.   STRONG and READ, JJ., absent.

Error to the Common Pleas of *Cumberland county.*

This was an amicable action between Jacob Stouffer, plaintiff, and Abraham Lamberton, defendant, entered April 21st 1865, in which the following case was stated for the opinion of the court, to be considered in the nature of a special verdict.

On the 24th June 1864 Mrs. Valeria F. Penrose and Mrs. Mary E. D. Blaney were the owners of the Middlesex estate, and on that day contracted to sell it by a written agreement to Jacob Stouffer, for the consideration of $27,100, and on the 14th day of July, in pursuance of said agreement, a deed was executed and delivered, and the purchase-money paid.

[Lamberton v. Stouffer.]

At the date of this article of agreement, and for the year preceding it, to wit, from April 1st 1863, the farm land of the estate was in the possession of Wm. Heagy as tenant from year to year, ending on the 1st of April of each year, upon the terms of his yielding and paying to the landlord, as rent, one-half of the grain, to be delivered in the mill to or for the landlord.

On the 10th July 1864 the tenant cut the wheat crop planted in the fall of 1863, and subsequently delivered the landlord's share, viz., 97 bushels of wheat, at the mill. He also then or subsequently cut the corn and oats crop planted after the 1st April 1864, and delivered the landlord's share to Mr. Stouffer, as to which it is admitted there is to be an apportionment to 1st July 1864.

Abraham Lamberton, the agent of the said Valeria F. Penrose and M. E. D. Blaney, received the landlord's share of the wheat aforesaid, and sold it for $2.50 a bushel; and he is willing to pay the proceeds over, either to the said Jacob Stouffer, or the said Valeria F. Penrose and M. E. D. Blaney, as either may be entitled to it.

If the court should be of opinion that the same or any part of it should be paid to the said Jacob Stouffer, then judgment to be entered for such amount: if he is not entitled to anything, then judgment for the defendant.

By the articles of agreement referred to in the statement, Valeria F. Penrose agreed to sell and convey clear of encumbrances to Jacob Stouffer, all that tract of land, mills and improvements, called the Middlesex estate, &c.   *   *   *   * " In consideration whereof, the said Jacob Stouffer hereby covenants to pay the sum of $27,100 when the title is made and delivered. The parties understand that the said Jacob Stouffer is purchasing the estate, subject to the rights of the present tenants, he by the purchase becoming the landlord and entitled to all the rents, issues and profits of the estate from and after the date hereof, including the proceeds of the farm. Mr. Stouffer will receive the rents and account to Mrs. Penrose for her portion of them up to the 1st of July 1864. And Mrs. Mary E. D. Blaney, being a part owner of the property, hereby becomes a party and assents hereto."

The court below (Graham, P. J.) delivered the following opinion:—

" On the 24th of June 1864, Mrs. Penrose and Mrs. Blaney contracted to sell the Middlesex estate, of which they were the owners, to Abraham Stouffer, by a written agreement; and on the 14th July following (1864), in pursuance of said agreement, a deed was executed and delivered, and the purchase-money paid.

" At the date of the agreement, and for the preceding year, to wit, from 1st April 1863, the farm land was in the possession of

Wm. Heagy, as tenant from year to year, ending on the 1st of April of each year, he yielding and paying to the landlord as rent one-half of the grain, to be delivered in the mill for the landlord.

" On the 10th of July 1864 the tenant cut the wheat, and afterwards delivered the landlord's share, 97 bushels, at the mill. Abraham Lamberton, the agent of Mrs. Penrose and Mrs. Blaney, removed the wheat thus delivered, and sold it at $2.50 per bushel.

" The question presented is, whether the plaintiff, Jacob Stouffer, is entitled to the whole or any part of the proceeds of the wheat sold by Mr. Lamberton, as agent for the defendants.

" In the contract of sale of 24th June 1864, there is the following agreement: 'The parties understand that the said Jacob Stouffer is purchasing the estate subject to the rights of the present tenants, he by the purchase becoming the landlord, and entitled to all the rents, issues and profits of the estate from and after the date hereof, including the proceeds of the farm. Mr. Stouffer will receive the rents and account to Mrs. Penrose for her portion of them up to 1st July 1864.'

" The defendant contends, that the wheat in controversy having been sown the preceding autumn of 1863, it is the rent of that year, and that the plaintiff is not entitled to any part of it.

" Had the contract been silent as to the rent, the purchaser would clearly have been entitled to the accruing rent which became due and payable after the execution and delivery of the deed and delivery of possession ; for it is well settled, that accruing rent, due or payable, accompanies the reversion. But the parties have disposed of the rents, issues and profits by their contract of 24th June. By it the plaintiff became landlord, and was entitled to all the rents, issues and profits of the estate, from and after the 24th of June, including the proceeds of the farm. What proceeds does this refer to ? We think it includes all proceeds derived from the farm after that date. The wheat was then growing, as well as the corn and oats, all sown and planted by the tenant of the vendors ; and they might, with as much propriety, claim the whole of the proceeds of the oats and corn. But the agreement goes further. Mr. Stouffer was to receive the rents, and account to the vendors for their portion of them, up to July 1st 1864. This would include all rents not due and payable at the date of the agreement. It is not material to the question presented, whether we consider the wheat sown in the fall of 1863, which matured in the summer of 1864, the rents of 1863 or 1864. By the custom in Pennsylvania, the tenant who sows the land, and whose time of tenancy expires on the 1st of April following, before the maturity of the grain sown by him, has a right of entry after the expiration of the time of his occupancy, to cut and take away the way-going crop ; so that his lease does

[Lamberton *v.* Stouffer.]

not terminate with his right of occupancy, but continues for certain purposes, and gives him a right to enter and take away the grain he has sown. The grain sown in 1863, and harvested in 1864, are the issues and profits of 1864, for they then accrue and are received; and a farmer, in counting up the profits of his farm, reckons the crop harvested the same season, and does not include the wheat crop of the preceding summer and omit that which is realized with his oats and corn. In common parlance, in Pennsylvania, the issues and profits of a farm to the landlord are the proceeds of the crop realized in one season. But if the proper construction of the contract of sale is, as contended for by defendant's counsel, that the wheat sown in 1863, and harvested in 1864, are the issues and profits of 1863, and not of 1864, then the vendors would not only receive the whole of the crop cut in 1864, but one-fourth of the fall crop sown in 1864 and harvested in 1865, more than a year after they had executed the deed and delivered possession to the vendee.

" We consider the wheat crop harvested and the proceeds realized in 1864, a part of the issues and profits of that year, and that the plaintiff is entitled to receive three-fourths of $242.50, the price of 97 bushels of wheat at $2.50 per bushel.

" We direct judgment to be entered for plaintiff for $181.87½."

The defendant removed the case to the Supreme Court, and assigned thus rendering judgment, for error.

*C. B. Penrose, A. B. Sharpe* and *E. S. Miller*, for plaintiffs in error, cited Stultz *v.* Dickey, 5 Binn. 285; 3 Kent Com. 460; Gilbert on Rents 145; Briggs *v.* Thompson, 9 Barr 338; Rinehart *v.* Olwine, 5 W. & S. 157; Borrell *v.* Dewart, 1 Wright 134; Taylor's Land. & Tenant, § 538 and note.

*F. Watts,* for defendant in error.

The opinion of the court was delivered, July 3d 1867, by
THOMPSON, J.—The *redditus* or rent of a cropper being a portion of the crop, falls due and is payable only when the crop is harvested. This is the universal understanding, and manifestly what was intended by the contract between the vendors, Mrs. Penrose and Mrs. Blaney, and the plaintiff. A very special contract might, it is true, provide for a different time of payment, but there was nothing like that in this case. The learned judge below treated the point in controversy so satisfactorily in his opinion, that we are content to affirm the judgment for the reasons therein given.

Judgment affirmed.